[No. A066860. First Dist., Div. Five. Oct. 4, 1995.]

A. PETERS EVANS, Plaintiff and Appellant, v.
VICTOR UNKOW et al., Defendants and Respondents.

1492

**COUNSEL**

William M. Simpich for Plaintiff and Appellant.

Tanke & Willemsen and Tony J. Tanke for Defendants and Respondents.

**OPINION**

**KING, J.—**

## I. INTRODUCTION

In this case we hold that declarations on a special motion to strike a SLAPP suit (strategic lawsuit against public participation) (Code Civ. Proc., § 425.16) may not include averments on information and belief. We affirm a judgment dismissing a defamation action by A. Peter Evans against 10 individual defendants for failure to establish a probability he would prevail. (Code Civ. Proc., § 425.16, subd. (b).)

## II. BACKGROUND

Evans was a member of the Board of Directors of the East Palo Alto Sanitary District. On November 4, 1993, the defendants signed a notice of intention to circulate a petition to recall him. (Elec. Code, § 27020 et seq.)

The notice stated the following "reasons for the proposed recall" (Elec. Code, § 27020, subd. (b)): "Spent over $8,000.00 on a party, but less than $6,700.00 on pipeline repair. [¶] Hired friends as party consultants, costing taxpayers $3,000.00. [¶] Went to Palm Springs, overspent $4,200.00 travel budget. Refused to repay the unauthorized funds. [¶] Spent $6,000.00 for an ornamental fireplace, yet refused to spend less than $1,500.00 testing for toxic chemicals. High levels of arsenic were later discovered. [¶] Proposed spending $3 Million on Nairobi center, to prevent a casino, rates could rise to nearly $500.00 for every home and apartment to purchase it. [¶] Attempted to hire his personal attorney to represent District. [¶] Endangered the health of thousands of community residents by refusing to test industrial sewage to investigate discharges of toxic substances into the system. [¶] Blocked action on lethal cyanide contamination (20,000 gallons) within the District. [¶] Refused to repair a known pipeline leak in an area of arsenic contaminated groundwater. [¶] Failed to replace major pipeline serving 1,000+ apartments and homes: exposing residents (mainly low-income apartments) to health risk from contaminated sewage. [¶] Public attacks on Mayor and City Council. [¶] Denied legal representatives of local business permission to speak in public sessions."

Evans was eventually voted from office in a recall election. Evans sued the 10 defendants for defamation and related torts. They filed a special motion to strike under Code of Civil Procedure section 425.16, which permits courts to strike a so-called "Strategic Lawsuit Against Public Participation," or SLAPP suit, "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances" (Code Civ. Proc., § 425.16, subd. (a)), "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim" (Code Civ. Proc., § 425.16, subd. (b)).

Subdivision (b) of Code of Civil Procedure section 425.16 states, "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." The defendants submitted declarations by themselves and by nonparty Dennis C. Scherzer, another board member, in support of the motion to strike.

Scherzer's declaration discussed his "political differences" with Evans, stating that "I have dissented from financial decisions made by the District Board and have protested its actions." The declaration described an incident at a board meeting on July 8, 1993, when Evans, who is African-American, "shouted me down," "falsely accused me of attacking the District Manager because he was a 'black man,' and "went on to call me a 'racist dog.' " The

declaration also asserted facts underlying each of the reasons asserted in the recall notice, and explained that before the defendants signed the notice he "generally discussed" the reasons with them and informed them that the reasons "were true and correct statements and a fair comment on the actions of A. Peter Evans in his capacity as a public official and member of the Board of the East Palo Alto Sanitary District."

The defendants' declarations each contained identical statements that their knowledge of Evans was "based on a number of sources. I read local newspapers reporting board actions and District operations. I discuss District issues with other citizens, some of whom attend board meetings. I have formed my opinions and beliefs about the District and the performance of its board, including board member A. Peter Evans, from these various sources." The declarations further stated that Scherzer had written the reasons asserted in the recall petition, and "Scherzer has a reputation for truth and veracity in this community. To my knowledge, he has never made any false statement about the District, its operations, or the actions of its board. Based on my own information as well as Scherzer's superior knowledge as a board member and his reputation, at the time I signed and circulated the Notice of Intention and the Recall Petition, I believed the statements made in the Reasons to Recall section. I had no reason to doubt their accuracy."

In opposing the special motion to strike, Evans submitted his own declaration, responding to the allegations in the recall petition. His declaration also averred, "Director Scherzer and I are political adversaries. We have argued about many matters. On the basis of information and belief, I allege that our adversarial relationship is a matter of common knowledge to the defendants, throughout the community and in the public media that the defendants claim to rely on as a main source of information."

The defendants filed written evidentiary objections to much of Evans's declaration as being improper opinion and argument. They also objected to Evans's averment on information and belief concerning defendants' knowledge of his adversarial relationship with Scherzer, on the ground that "'information' and 'belief' is not [a] foundation for admissible evidence."

The court granted the special motion to strike and rendered judgment dismissing the action. In a written decision, the court ruled that Evans had failed to prove constitutional malice—i.e., knowledge of falsity or reckless disregard of the truth (*New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412])—or that the challenged statements were false. The court also said it "has not considered the substantial portions of plaintiff's declaration in opposition which are argument and

mere opinion, thereby sustaining defendants' objections on those grounds." Finally, the court commented, "To permit Mr. Evans's case to go forward with the woeful showing made by him would be in clear contravention of the legislative policy set forth in CCP § 425.16 and impermissibly 'chill' the debate and discussion so necessary to a healthy democratic process."

Evans moved for reconsideration, asking for the first time that the court permit a reasonable period of discovery under subdivision (g) of Code of Civil Procedure section 425.16, which states that discovery is stayed upon the filing of a special motion to strike but "[t]he court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision." The court denied reconsideration.

## III. DISCUSSION

█ In opposing the special motion to strike, Evans had the burden of establishing a "probability" that he would "prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b).) This means he had to present evidence showing he would establish a prima facie case at trial. (*Robertson* v. *Rodriguez* (1995) 36 Cal.App.4th 347, 355 [42 Cal.Rptr.2d 464]; *Wilcox* v. *Superior Court* (1994) 27 Cal.App.4th 809, 823-824 [33 Cal.Rptr.2d 446]; *Dixon* v. *Superior Court* (1994) 30 Cal.App.4th 733, 746 [36 Cal.Rptr.2d 687].)[1] █ On appeal, we must independently review the entire record to determine whether Evans made a sufficient prima facie showing of clear and convincing evidence of constitutional malice. (*Robertson* v. *Rodriguez, supra,* 36 Cal.App.4th at p. 358.)

█ Evans contends he made a prima facie showing of constitutional malice in two ways: (1) the defendants had "obvious reasons to doubt the veracity" of Scherzer (*St. Amant* v. *Thompson* (1968) 390 U.S. 727, 732 [20 L.Ed.2d 262, 268, 88 S.Ct. 1323]) because Scherzer and Evans were known to be political adversaries, and (2) the allegations that Evans had refused to repair a known pipeline leak of arsenic and had blocked action on lethal cyanide contamination were "so inherently improbable that only a reckless [person] would have put them in circulation" (*ibid.*).

---

[1]In construing a similar statute, Code of Civil Procedure section 425.13, which requires a motion to amend a complaint to state a punitive damages claim against a health care provider and demands a showing of a substantial probability that the plaintiff will prevail on the claim, the California Supreme Court has held that the plaintiff must demonstrate "a legally sufficient claim which is . . . supported by competent, admissible evidence." (*College Hospital, Inc.* v. *Superior Court* (1994) 8 Cal.4th 704, 719 [34 Cal.Rptr.2d 898, 882 P.2d 894].) The Supreme Court acknowledged the "prima facie case" standard articulated by other courts for similar statutes, and observed that ". . . there is little substantive difference between this approach and the one we articulate." (*Id.* at p. 720, fn. 6.)

On the first point, it is true that reliance solely on "a source known to be hostile" toward the plaintiff may support a finding of reason to doubt the source's veracity, and hence constitutional malice. (*Fisher* v. *Larsen* (1982) 138 Cal.App.3d 627, 740 [188 Cal.Rptr. 216]; see generally, *Reader's Digest Assn.* v. *Superior Court* (1984) 37 Cal.3d 244, 258 [208 Cal.Rptr. 137, 690 P.2d 610].) It is also true that, although political adversity alone does not necessarily equate with hostility, the record in this case contains specific evidence of a hostile encounter between Scherzer and Evans, consisting of Scherzer's own averments concerning their confrontation at the board meeting of July 8, 1993.

Evans failed, however, to establish that the defendants *knew* of such hostility. There was no evidence they were present at the July 8, 1993, board meeting or otherwise witnessed or heard of any hostility between Evans and Scherzer. (Cf. *Fisher* v. *Larsen, supra,* 138 Cal.App.3d at p. 639 [defendants acknowledged their awareness of "strained relations" between plaintiff and informant].)[2] Evans's sole assertion on this point in his opposing declaration was his averment, *on information and belief,* that the "adversarial relationship" between the two was a matter of common knowledge "throughout the community and in the public media that the defendants claim to rely on as a main source of information."

The problem with this averment is that information and belief, within the context of a special motion to strike a SLAPP suit, is inadequate to show "a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b).) An assessment of the probability of prevailing on the claim looks to *trial,* and the evidence that will be presented at that time. (See *Wilcox* v. *Superior Court, supra,* 27 Cal.App.4th at p. 824 [must be prima facie showing of facts which "if accepted by the trier of fact" would negate constitutional defenses].) Such evidence must be *admissible.* (*Id.* at p. 830.) As the court in *Wilcox* explained, the plaintiff's burden of establishing "facts to sustain a favorable decision if the evidence submitted . . . is credited" (*Hung* v. *Wang* (1992) 8 Cal.App.4th 908, 931 [11 Cal.Rptr.2d 113]) implies a requirement of admissibility, because "otherwise there would be nothing for the trier of fact to credit." (*Wilcox* v. *Superior Court, supra,* 27 Cal.App.4th at p. 830.) At trial, "the testimony of a witness

---

[2]Evans also calls our attention to his election campaign flier charging that Scherzer "is opposed to the prosperity of minorities and of Evans" and that "when Evans has campaigned, Scherzer has been seen tearing down his signs." But the *defendants* submitted this flier not to establish the truth of the matters stated, but to identify two of the persons the flier listed as "supporters" as the friends whom Evans had purportedly hired as party consultants. And, again, Evans presented no evidence that the defendants had seen the flier or otherwise knew of these charges.

concerning a particular matter is inadmissible unless he has personal knowledge of the matter." (Evid. Code, § 702, subd. (a).) An averment on information and belief is inadmissible at trial, and thus cannot show a probability of prevailing on the claim.

This conclusion is validated by *College Hospital, Inc.* v. *Superior Court, supra,* 8 Cal.4th at page 720, where the Supreme Court held that an affidavit in support of a motion to amend a complaint to state a punitive damages claim against a health care provider under Code of Civil Procedure section 425.13 (see *ante,* fn. 1) must "set forth competent admissible evidence within the personal knowledge of the declarant." If an averment on information and belief is inadequate under Code of Civil Procedure section 425.13, it must likewise be inadequate under section 425.16, for the two statutes are substantially similar. (See *College Hospital, Inc.* v. *Superior Court, supra,* 8 Cal.4th at p. 719; *Castro* v. *Higaki* (1994) 31 Cal.App.4th 350, 358, fn. 8 [37 Cal.Rptr.2d 84].)

Affidavits on information and belief are permitted "where the facts to be established are incapable of positive averment" (*City of Santa Cruz* v. *Municipal Court* (1989) 49 Cal.3d 74, 87 [260 Cal.Rptr. 520, 776 P.2d 222]), but that is not the case here. ▆▆ If the adversarial relationship between Evans and Scherzer was, as Evans averred on information and belief, "common knowledge" in the community and public media, then Evans could have shown this by submitting declarations to that effect by members of the community and evidence of specific news media exposure of that relationship (e.g., newspaper articles). He did not do so.

Thus, while there was evidence of hostility between Evans and Scherzer, Evans failed to establish, through competent admissible evidence within the personal knowledge of him or anyone else, that the defendants knew of such hostility. There was no prima facie showing of constitutional malice consisting of obvious reasons for the defendants to doubt Scherzer's veracity.[3]

On the second point, the purported inherent improbability of the toxic leak and contamination allegations, Evans argues these were "wild representations" of criminal misconduct amounting to "negligent homicide, if not murder." But, alas, there is nothing inherently improbable about malfeasance in public office. As the defendants observe in their brief, "Within the realm of human experience, politicians, like others, are sometimes grandiose, lazy,

---

[3]The trial court sustained the defendants' evidentiary objections of improper opinion and argument without mentioning the objection to averment on information and belief, but an appealed judgment that is correct on any legal theory must be affirmed regardless of the trial judge's underlying reasons. (*Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

reckless, or even corrupt. These things are not inherently improbable." (Cf. *St. Amant* v. *Thompson, supra,* 390 U.S. at pp. 732-733 [20 L.Ed.2d at pp. 267-268] [no inherent improbability in accusation of criminal conduct by deputy sheriff in accepting money from union official]; *McCoy* v. *Hearst Corp.* (1986) 42 Cal.3d 835, 865 [231 Cal.Rptr. 518, 727 P.2d 711] [no inherent improbability in accusation that police inspectors and prosecutor procured witness's testimony by coercion and physical assault].) We do not mean to imply that Evans committed any such misconduct; indeed, because we conclude he did not make the required prima facie showing of constitutional malice we do not reach the defendants' claim that the statements in the recall notice were "substantially true." We simply conclude that the allegations were not "so inherently improbable that only a reckless [person] would have put them in circulation." (*St. Amant* v. *Thompson, supra,* 390 U.S. at p. 732 [20 L.Ed.2d at p. 268].)

In short, Evans failed to make a prima facie showing of constitutional malice on the special motion to strike. Thus, the court properly granted the motion and dismissed the action.[4]

■ Evans contends that if we find no error, we should remand the cause for discovery to permit him to build a prima facie case. But Evans failed to comply with Code of Civil Procedure section 425.16, subdivision (g), by filing a noticed motion below for discovery supported by a showing of good cause. He did not ask for discovery until he moved for reconsideration, and his counsel's only excuse for the tardy request was that "[p]laintiff was reasonable in believing that it would not be necessary to cite [the statutory discovery provision] in order to prevail on the previous motion." That was not a showing of good cause. The failure to comply with the statute by making a timely and proper showing below makes his discovery request meritless. (*Robertson* v. *Rodriguez, supra,* 36 Cal.App.4th at p. 357; *Lafayette Morehouse, Inc.* v. *Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 868 [44 Cal.Rptr.2d 46].)

■ The defendants correctly contend that if they prevail on this appeal they are entitled to recover their appellate attorney fees. A statute authorizing an attorney fee award at the trial court level includes appellate attorney fees unless the statute specifically provides otherwise. (*Morcos* v. *Board of Retirement* (1990) 51 Cal.3d 924, 927-929 [275 Cal.Rptr. 187, 800 P.2d 543]; *Grade-Way Construction Co.* v. *Golden Eagle Ins. Co.* (1993) 13

---

[4]Because of this conclusion, we do not reach Evans's contention that the trial court erred in sustaining the defendants' evidentiary objections on the grounds of improper argument and opinion. Even disregarding those objections, the record still lacked evidence of constitutional malice.

Cal.App.4th 826, 837-838 [16 Cal.Rptr.2d 649].) Under Code of Civil Procedure section 425.16, subdivision (c), a prevailing defendant on a special motion to strike a SLAPP suit "shall be entitled to recover his or her attorney's fees and costs." The statute does not preclude recovery of appellate attorney fees by a prevailing defendant-respondent; hence they are recoverable.

## IV.  DISPOSITION

The judgment of dismissal is affirmed. The defendants shall recover their costs and attorney fees on appeal, the amount of which shall be determined by the trial court.

Peterson, P. J., and Haning, J., concurred.